UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIGUEL A. CINTRON,<br><br>                      Plaintiff,<br><br>v.<br><br>PETER V. MCLOUGHLIN,<br>and SYSTEMS MARKETING, INC.,<br><br>                     Defendants. | CIVIL ACTION NO. 04-112930-REK |

## DEFENDANTS' ANSWER AND COUNTERCLAIM OF DEFENDANT SYSTEMS MARKETING, INC.

Defendants Peter V. McLoughlin and Systems Marketing, Inc. ("Defendants") answers Plaintiff's Complaint as follows:

### II. PARTIES

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1.

2. Defendant Peter V. McLoughlin denies that he resides at 75 Old Post Road, Southport, Connecticut.

3. Admitted.

### III. JURISDICTION AND VENUE

4. Defendants deny that the amount in controversy in Plaintiff's Complaint exceeds $75,000, and otherwise state that the allegations contained in paragraph 4 do not call for a responsive pleading.

## IV.   FACTUAL ALLEGATIONS

5. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.

6. Admitted.

7. Defendants admit that in or around April, 2002 Plaintiff Miguel Cintron ("Cintron") and Systems Marketing, Inc. ("SMI") entered into a joint venture for the purpose of developing a specialized computer application, and otherwise deny the allegations contained in paragraph 7 of the Complaint.

8. Defendants state that the agreement was for a joint venture between SMI and Cintron, and that the sole purpose of the joint venture was to develop the application to provide services to R.K. Marketing, LLC and its customers, and otherwise deny the allegations contained in paragraph 8.

9. Admitted.

10. Defendants state that SMI agreed to provide servers and other required hardware, bandwith, customers, commercial office space, and no more than $20,000 to pay programming contractors, and otherwise deny the allegations contained in paragraph 10.

11. Admitted that Cintron and SMI so agreed.

12. Denied.

13. Denied.

14. Denied.

15. The allegations contained in paragraph 15 state a legal conclusion, to which no responsive pleading is required.

16. Denied.

17. Denied.

18. Defendants admit that Cintron retained computer programmers, and otherwise deny the remaining allegations contained in Paragraph 18.

19. Denied.

20. Admitted that SMI contributed computer hardware components and cash investment for the Project; otherwise the allegations contained in paragraph 20 are denied.

21. Denied.

22. Denied.

23. Admitted. Further answering, Defendants state that Cintron abandoned the Project and the Joint Venture before the Project was complete.

24. Denied.

25. The allegations contained in paragraph 25 appear to state the contents of written documents, which documents speak for themselves.

26. Denied.

27. Denied. Further answering, Defendants state that there have been no profits received from the Project.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

V.   CAUSES OF ACTION

**COUNT I**
**(Breach of Fiduciary Duty)**

33. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

34. The allegations contained in paragraph 34 state a legal conclusion, to which no responsive pleading is required.

35. Denied.

36. Denied.

37. Denied.

**COUNT II**
**(Breach of Contract)**

38. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

**COUNT III**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

43. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

44. The allegations contained in paragraph 44 state a legal conclusion, to which no responsive pleading is required.

45. Denied.

46. Denied.

## COUNT IV
### (Unjust Enrichment)

47. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

48. Denied.

49. Denied.

50. Denied.

## COUNT V
### (Quantum Meruit)

51. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Defendants admit that Citron received no payment, and otherwise deny the allegations contained in Paragraph 56.

57. Denied.

## COUNT VI
### (Promissory Estoppel)

58. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

59. Defendants admit that SMI agreed to pay Cintron one-half the net profits from the Project, and otherwise deny the allegations contained in paragraph 59.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

## COUNT VII
### (Deceit)

65. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

66. Admitted.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

## COUNT VIII
### (Negligent Misrepresentation)

72. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

73. Admitted.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

## COUNT IX
### (Action for an Accounting)

79. Defendants repeat their responses to the foregoing paragraphs as if fully restated herein.

80. Denied.

### FIRST AFFIRMATIVE DEFENSE

Each Count of Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the statute of limitations.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery due to his unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

If Plaintiff has suffered any damages, said damages are the result of a third party's actions for which Defendants are not responsible.

### SIXTH AFFIRMATIVE DEFENSE

If Plaintiff has suffered any damages, said damages are the result of his own actions for which Defendants are not responsible.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has waived each and every claim that is alleged in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of estoppel.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate his damages.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to join an indispensable party.

## ELEVENTH AFFIRMATIVE DEFENSE

The amount in controversy under Plaintiff's Complaint does not meet federal court jurisdictional limits.

## COUNTERCLAIM

### Parties

1. Defendant and Plaintiff-in-Counterclaim Systems Marketing, Inc. ("SMI") is a Connecticut corporation with a principal place of business at 75 Old Post Road, Southport, Connecticut. SMI is engaged in the sale, maintenance, service, and leasing of custom built and configured Sun Microsystems workstations and servers for corporate clients.

2. Plaintiff and Defendant-in-Counterclaim Miguel Cintron ("Cintron") is an individual who, on information and belief, resides in Winchester, Massachusetts.

### Facts

3. In April, 2002 SMI entered into discussions with RK Marketing, LLC ("RK"), which was in the business of bulk e-mail marketing. RK's owner, Robert Konigsberg, indicated that his company and its customers would be interested in using a bulk e-mail

program that could be sent from SMI's servers. Consequently, SMI conceived the idea of developing such a program ("the Application"), and looked around for an expert in computer programming to see if the project was viable and if it could be developed quickly.

4. In or around April, 2002 SMI discussed development of the Application with Cintron, who represented himself as having expertise in computer programming. Cintron represented to SMI that he knew programmers who could develop the proposed Application.

5. In or around April, 2002 SMI and Cintron entered into a joint venture agreement ("the Joint Venture Agreement") whereby the parties would develop the Application for use by RK and possibly other customers. The Joint Venture Agreement was based upon Cintron's express representation that the Application could be developed and delivered within approximately two months at an out-of-pocket cost (for programming work) of $20,000 or less. SMI did not pursue discussions with other potential developers based on Cintron's representations.

6. As his contribution to the Joint Venture, Cintron agreed that he would retain programmers, oversee the programming work, actively maintain the computer network, and deliver the Application on time at a cost of approximately $20,000. Cintron invested no cash or other assets in the Joint Venture.

7. As its contribution to the Joint Venture, SMI agreed that it would provide the servers and other required hardware, bandwith, customers (RK), and commercial office space, and that it would advance funds to Cintron's programming contractors, in an amount not to exceed $20,000.

8. Time was of the essence in developing the Application, given the rapidly changing market and given that the Application was being developed with one specific customer in mind, RK. In July, 2002 RK signed an agreement with SMI for use of the Application.

9. SMI and Cintron agreed that they would divide the net profits from their Joint Venture evenly, net profits being defined as net revenues in excess of expenditures, including monthly allowances for servers and other hardware supplied by SMI, commercial office space usage, and utilities. SMI incurred various expenditures in connection with the Joint Venture, including maintaining a T1 internet connection at SMI's offices at a cost of $750 per month to support the project.

10. Over the next several months, Cintron went through a series of programmers who were unsuccessful in developing the Application. SMI had numerous contacts with Cintron throughout 2002 urging him to complete the Application as soon as possible. Cintron repeatedly reassured SMI that the Application was feasible, was progressing, and would soon be delivered. The Application was not delivered on time, nor anytime in 2002.

11. Cintron contracted with a new programmer named Rafael Benzan ("Benzan") in very late 2002. In February, 2003 Cintron represented to SMI that the Application was close to being ready to use and asked that Benzan be advanced his fees in order to complete the Application as soon as possible. In reliance on Cintron's representations, SMI made three payments to Benzan between February 20, 2003 and March 10, 2003 totaling $28,000.

12. At Cintron's urging and in reliance upon his further representation that the Application was very close to completion, SMI made an additional payment to Benzan on April 22, 2003 of $9,000.

13. By the end of April, 2003 it was evident that the Application was not operational. At that time SMI spoke to a programming expert who indicated that there were major design flaws in the Application, and that it would be best to scrap the Application and start over with the project.

14. On April 20, 2003, Cintron informed SMI that he was "done" with the project. On May 1, 2003 Cintron informed Benzan that he would no longer be working on the Application. In May, 2003, in discussions between SMI and Cintron, the Joint Venture was effectively dissolved. Cintron never thereafter inquired as to the status of the Application or the Joint Venture.

15. After the Joint Venture dissolved, SMI paid Benzan and another programmer who worked under Cintron, Michelle Bonugli-Smith, $6,000 each for hours they claimed were accrued prior to March 31, 2003. Each programmer is also claiming additional monies owed for worked performed prior to March 31, 2003 under Cintron's direction.

16. Beginning in May, 2003, on its own SMI undertook efforts to make the Application operational. Two new programmers, working under SMI's direction, were brought in. Eventually, after a substantial additional time and money were invested, a version of the Application with reduced usability was produced, with few of the features in the original specification sheet. Even with the additional work, the Application remains unstable, and cannot be directly used by any customer, contrary to SMI's original conception of the program.

17. The contract signed by RK in 2002 expired in July, 2003, and the product contemplated by the contract was no longer marketable, as now no one paid for e-mail merely by volume sent anymore, but only by result (successful "conversions").

18. Ultimately SMI, through RK, used the reconfigured Application to send cost-per-conversion e-mail offers on behalf of one customer. Revenues received from this customer have not yet exceeded SMI's substantial cash investment in developing the Application.

## COUNT I
## (BREACH OF CONTRACT)

19. SMI repeats the allegations in the Counterclaim set forth above as if fully restated herein.

20. By failing to produce the Application in a complete and operational form within the agreed-upon two month time frame and at a cost of under $20,000 or less, Cintron breached his Joint Venture Agreement with SMI.

21. As the result of said breach, SMI has sustained damages in an amount to be determined at trial.

## COUNT II
## (BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING)

22. SMI repeats the allegations in the Counterclaim set forth above as if fully restated herein.

23. Cintron had an implied duty to deal with SMI fairly and in good faith under the parties' Joint Venture Agreement.

24. By failing to produce the Application in a complete and operational form within the agreed-upon two month time frame and at a cost of $20,000 or less, Cintron breached the implied covenant of good faith and fair dealing in the Joint Venture Agreement.

25. Cintron further breached the implied covenant of good faith and fair dealing in the Joint Venture Agreement by repeatedly and groundlessly reassuring SMI that the Application would soon be operational when technical problems were unresolved.

26. As the result of said breach, SMI has sustained damages in an amount to be determined at trial.

## COUNT III
### (NEGLIGENT MISREPRESENTATION—REPRESENTATIONS IN 2002)

27. SMI repeats the allegations in the Counterclaim set forth above as if fully restated herein.

28. In April, 2002 Cintron represented to SMI that: (i) he had the necessary expertise to develop the Application; (ii) that the Application could be developed in a period of approximately two months for $20,000 or less; and (iii) that he could hire and supervise programmers who could do the work necessary to develop the Application.

29. Cintron made the representations to SMI to induce SMI to enter into the Joint Venture Agreement and invest money in the Application.

30. These representations were material to SMI's decision to enter into a Joint Venture with Cintron.

31. Cintron knew or in the exercise of due care should have known that said representations were false: he did not have the necessary expertise to oversee

development of the Application, and, under his direction, the Application could not be created within two months and at a cost of $20,000 or less.

32. SMI reasonably relied upon the representations of Cintron by investing time and money in supporting the development of the Application.

33. As a direct and proximate result of Cintron's misrepresentations, SMI has sustained damages in an amount to be determined at trial.

### COUNT IV
### (NEGLIGENT MISREPRESENTATION—REPRESENTATIONS IN 2003)

34. SMI repeats the allegations in the Counterclaim set forth above as if fully restated herein.

35. In February, 2003 and again in April, 2003, Cintron represented to SMI that the Application was progressing well and was almost complete, and requested that SMI pay Benzan amounts totaling $37,000 in order to complete the Application.

36. These representations were made to induce SMI to continue with the Joint Venture, after it had become apparent that the Application, as developed so far, was not feasible and that Cintron did not have sufficient expertise to successfully develop the Application.

37. Cintron knew or in the exercise of due care should have known the representations made to SMI were false when made.

38. These representations were material to SMI's decision whether to invest more money in the Joint Venture.

39. SMI reasonably relied upon these representations in continuing to invest money in the Joint Venture.

14

40. As a direct and proximate result of these representations, SMI has sustained damages in an amount to be determined at trial.

## COUNT V
## (FRAUDULENT MISREPRESENTATION)

41. SMI repeats the allegations in the Counterclaim set forth above as if fully restated herein.

42. In February, 2003 and again in April, 2003, Cintron represented to SMI that the Application was progressing well and was almost complete, and requested that SMI pay Benzan amounts totaling $37,000 in order to complete the Application.

43. These representations were made to induce SMI to continue with the Joint Venture, after it had become apparent that the Application, as developed so far, was not feasible and that Cintron did not have sufficient expertise to successfully develop the Application.

44. These representations were material to SMI's decision to invest more money in the Joint Venture.

45. Cintron knew that these representations made to SMI were false when made.

46. SMI reasonably relied upon these representations in continuing to invest money in the Joint Venture.

47. As a direct and proximate result of these representations, SMI has sustained damages in an amount to be determined at trial.

WHEREFORE, Defendants Peter V. McLoughlin and Systems Marketing, Inc. and Plaintiff-in-Counterclaim Systems Marketing, Inc. request:

1. That judgment be entered in favor of Defendants Peter V. McLoughlin and Systems Marketing, Inc. and against Plaintiff Miguel A. Cintron on all counts set forth in Plaintiff's Complaint;

2. That judgment be entered in favor of Plaintiff-in-Counterclaim Systems Marketing, Inc. and against Defendant-in-Counterclaim Miguel A. Cintron on all counts of the Counterclaim;

3. That Defendants Peter V. McLoughlin and Systems Marketing, Inc. be awarded all such costs, interest, and attorneys' fees as provided by law; and

4. That Defendants Peter V. McLoughlin and Systems Marketing, Inc. have all such further relief as the court deems just and equitable.

Respectfully submitted,

PETER V. MCLOUGHLIN and
SYSTEMS MARKETING, INC.
By their attorneys,

*[signature]*

Michael B. Cosentino (BBO#558036)
Molly Cochran (BBO# 551833)
SEEGEL, LIPSHUTZ & WILCHINS, P.C.
60 William St., Suite 200
Wellesley, MA 02481
(781) 237-4400

Dated: August 13, 2004

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served by regular U.S. mail, postage prepaid, upon Peter F. Carr II, Eckert, Seamans, Cherin & Mellott, LLC, One International Place, 18th floor, Boston, MA 02110, this 13 day of August, 2004.

*[signature]*
Molly Cochran

K:\user\Molly\Systems Mktg\Pleadings\Answer.doc